IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| **DIGITAL VERIFICATION SYSTEMS, LLC,**<br><br>Plaintiff,<br><br>v.<br><br>**KDAN MOBILE SOFTWARE AMERICA, INC.**<br><br>Defendant. | CASE NO. _____<br><br>**JURY TRIAL DEMANDED** |

### ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff Digital Verification Systems, LLC ("Plaintiff" and/or "DVS") files this complaint against Kdan Mobile Software America, Inc. ("Defendant" and/or "Kdan") for infringement of U.S. Patent No. 9,054,860 (hereinafter "the '860 Patent") and alleges as follows:

### THE PARTIES

1. Plaintiff is a Texas limited liability company with an address of 1 East Broward Boulevard, Suite 700, Ft. Lauderdale, FL 33301.

2. On information and belief, Defendant is a Delaware corporation with a place of business at 219 Sutters Mill, Irvine, CA 92602. On information and belief, Defendant may be served through its registered agent, Incorp Services, Inc., 919 North Market Street, Suite 950, Wilmington, Delaware 19801.

### JURISDICTION AND VENUE

3. This action arises under the patent laws of the United States, 35 U.S.C. § 271 *et seq*. Plaintiff is seeking damages, as well as attorney fees and costs.

4. Jurisdiction is proper in this Court pursuant to 28 U.S.C. §§ 1331 (Federal Question) and 1338(a) (Patents).

5. On information and belief, this Court has personal jurisdiction over Defendant because Defendant has committed, and continues to commit, acts of infringement in this District, has conducted business in this District, and/or has engaged in continuous and systematic activities in this District.

6. On information and belief, Defendant's instrumentalities that are alleged herein to infringe were and continue to be used, imported, offered for sale, and/or sold in this District.

7. Venue is proper in this District under 28 U.S.C. §1400(b) because Defendant is deemed to be a resident in this District. Alternatively, acts of infringement are occurring in this District, and Defendant has a regular and established place of business in this District.

## PATENT-IN-SUIT

8. On June 9, 2015, the United States Patent and Trademark Office ("USPTO") duly and legally issued the '860 Patent, entitled "Digital Verified Identification System and Method." The '860 Patent is attached as Exhibit A.

9. Plaintiff is the sole and exclusive owner, by assignment, of the '860 Patent.

10. Plaintiff possesses all rights of recovery under the '860 Patent, including the exclusive right to recover for past, present and future infringement.

11. The inventor of the '860 Patent, Mr. Leigh M. Rothschild, was Chairman and Chief Executive Officer of IntraCorp Entertainment, Inc., a consumer software company with worldwide product distribution. From October 1998 through February 2004, Mr.

        Rothschild was also Chairman and founder of BarPoint.com, a NASDAQ publicly traded wireless company that was the leader and early creator of connecting symbology, such as barcodes, to the Internet.

12. Mr. Rothschild is a former presidential appointee to the High-Resolution Board for the United States under former President George H.W. Bush and has also served as an advisor for former President Ronald Reagan. Mr. Rothschild served Governors on technology boards, served as a special advisor to then Florida Secretary of Commerce John Ellis "Jeb" Bush, and served on the IT Florida Technology Board as an appointee of former Governor John Ellis "Jeb" Bush.

13. Mr. Rothschild chairs the Rothschild Family Foundation, which endows outstanding charities and institutions around the world.

14. The '860 Patent contains thirty-nine claims including four independent claims (claims 1, 23, 26 and 39) and thirty-five dependent claims.

15. The priority date of the '860 Patent is at least as early January 2, 2008. As of the priority date, the inventions as claimed were novel, non-obvious, unconventional, and non-routine.

16. Plaintiff alleges infringement on the part of Defendant of the '860 Patent.

17. The '860 Patent teaches a system and method for verifying and/or authenticating the identification of an entity associated with an electronic file, such as, for example, the digital signatory thereof. *See* '860 Patent, Abstract. The system and method include a module generating assembly structured to receive at least one verification data element, and at least one digital identification module structured to be associated with at least one entity. *Id*. The digital identification module is capable of being disposed or embedded within at least one electronic file. *Id*. Further, the digital identification module includes at least one

primary component structured to at least partially associate the digital identification module with the entity, and one or more metadata components. *Id*.

18. As noted, the claims of the '860 Patent have a priority date of at least as early as January 2, 2008. The present invention solves problems that existed with then-existing methods for electronically signing a document. One common then-existing method of electronically signing a document included placing a forward or backward slash prior to and/or following the signatory's typed name. '860 Patent, 1:26-36. Accordingly, an individual named John Doe might electronically sign a document by placing "/John Doe/" on a signature line that is typically at or near the end of the document. *Id*. These various electronic signatures or identifiers, however, are rather difficult to authenticate, and as such, it was an arduous, if not impossible task to verify and/or authenticate the identity of the signatory to a respectable degree. *Id*.

19. The claims of the '860 Patent overcome deficiencies existing in the art as of the date of invention and comprise non-conventional approaches that transform the inventions as claimed into substantially more than mere abstract ideas. For example, the inventive system includes a module generating assembly structured to create at least one digital identification module, wherein the digital identification module is structured to be embedded or otherwise disposed within one or more electronic files. *Id*., 1:65-2:3. Moreover, an entity, such as a signatory of an electronic document, may communicate at least one verification data element to the module generating assembly prior to creating the digital identification module. *Id*., 2:3-6. The verification data element(s) may include any indicia or data structured to facilitate the verification or identification of the corresponding entity. *Id*., 2:6-9. For example, the verification data element(s) may include a username

and/or password, date of birth, social security number, driver's license number, credit card number, etc. *Id*., 2:9-12. In at least one embodiment, the digital identification module includes at least one primary component and at least one metadata component. *Id*., 2:25-37. The primary component may include, for example, a digital representation of a signature and/or one or more reference codes, numbers, or characters. *Id*. The primary component is generally visible or perceptible to a reader, recipient, or other user of the electronic document. *Id*. In addition, the metadata components may be representative of the one or more verification data elements, or other data corresponding to the digital identification module and/or entity, including the date and time, location of the entity, etc. *Id*.

20. The system(s) and methods of the '860 Patent include software and hardware that do not operate in a conventional manner. For example, the software is tailored to provide functionality to perform recited steps and the hardware is configured (and/or programmed) to provide functionality recited throughout the claims of the '860 Patent.

21. The '860 Patent solves problems with the art that are rooted in computer technology and that are associated with electronically signing a document. The '860 Patent claims do not merely recite the performance of some business practice known from the pre-Internet world along with the requirement to perform it on the Internet.

22. The improvements of the '860 Patent and the features recited in the claims in the '860 Patent provide improvements to conventional hardware and software systems and methods. The improvements render the claimed invention of the '860 Patent non-generic in view of conventional components.

23. The improvements of the '860 Patent and the feature recitations in the claims of the '860 Patent are not those that would be well-understood, routine, or conventional to one of ordinary skill in the art at the time of the invention.

24. The '860 Patent was examined by Primary United States Patent Examiner Oscar Louie. During the examination of the '860 Patent, the United States Patent Examiner searched for prior art in the following US Classifications: 726/26; 713/176-180; and 380/59.

25. After conducting a search for prior art during the examination of the '860 Patent, the United States Patent Examiner identified and cited the following as the most relevant prior art references found during the search: US 6,757,826; US 6,895,507; US 6,948,069; US 6,978,369; US 7,047,416; US 7,603,621; US 7,844,918; US 2002/0026575; US 2003/0115151; US 2003/0217275; US 2005/0050462; US 2005/0160272; US 2006/0173847; US 2008/0040693; and US 2008/0082509.

26. After giving full proper credit to the prior art and having conducted a thorough search for all relevant art and having fully considered the most relevant art known at the time, the United States Patent Examiner allowed all of the claims of the '860 Patent to issue. In so doing, it is presumed that Examiner Louie used his knowledge of the art when examining the claims. *K/S Himpp v. Hear-Wear Techs., LLC,* 751 F.3d 1362, 1369 (Fed. Cir. 2014). It is further presumed that Examiner Louie had experience in the field of the invention, and that the Examiner properly acted in accordance with a person of ordinary skill. *In re Sang Su Lee,* 277 F.3d 1338, 1345 (Fed. Cir. 2002). In view of the foregoing, the claims of the '860 Patent are novel and non-obvious, including over all non-cited art which is merely cumulative with the referenced and cited prior art. Likewise, the claims of the '860 Patent are novel and non-obvious, including over all non-cited contemporaneous state of the art

systems and methods, all of which would have been known to a person of ordinary skill in the art, and which were therefore presumptively also known and considered by Examiner Louie.

27. The claims of the '860 Patent were all properly issued, and are valid and enforceable for the respective terms of their statutory life through expiration, and are enforceable for purposes of seeking damages for past infringement even post-expiration. *See, e.g., Genetics Institute, LLC v. Novartis Vaccines and Diagnostics, Inc.,* 655 F.3d 1291, 1299 (Fed. Cir. 2011) ("[A]n expired patent is not viewed as having 'never existed.' Much to the contrary, a patent does have value beyond its expiration date. For example, an expired patent may form the basis of an action for past damages subject to the six-year limitation under 35 U.S.C. § 286") (internal citations omitted).

28. The nominal expiration date for the claims of the '860 Patent is no earlier than April 7, 2034.

### COUNT I
### (Infringement of United States Patent No. 9,054,860)

29. Plaintiff refers to and incorporates the allegations in Paragraphs 1 – 28, the same as if set forth herein.

30. This cause of action arises under the patent laws of the United States and, in particular under 35 U.S.C. §§ 271, *et seq*.

31. Defendant has knowledge of its infringement of the '860 Patent, at least as of the service of the present complaint.

32. The '860 Patent is valid, enforceable, and was duly issued in full compliance with Title 35 of the United States Code.

33. Upon information and belief, Defendant has infringed and continues to infringe one or more claims, including at least Claim 1, of the '860 Patent by manufacturing, using, importing, selling, offering for sale, and/or providing (as identified in the Claim Chart attached hereto as Exhibit B) its product that is a system for e-signing digital documents safely ("Product(s)"), which infringes at least Claim 1 of the '860 Patent. Defendant has infringed and continues to infringe the '860 patent either directly or through acts of contributory infringement or inducement in violation of 35 U.S.C. § 271.

34. Defendant also has and continues to directly infringe, literally or under the doctrine of equivalents, one or more claims, including at least Claim 1, of the '860 Patent, by having its employees internally test and use these exemplary Products.

35. The service of this Complaint, in conjunction with the attached claim chart and references cited, constitutes actual knowledge of infringement as alleged here.

36. Despite such actual knowledge, Defendant continues to make, use, test, sell, offer for sale, market, and/or import into the United States, products that infringe one or more claims, including at least Claim 1, of the '860 Patent. On information and belief, Defendant has also continued to sell the exemplary Products and distribute product literature and website materials inducing end users and others to use its products in the customary and intended manner that infringes one or more claims, including at least Claim 1, of the '860 Patent. *See* Exhibit B (extensively referencing these materials to demonstrate how they direct end users to commit patent infringement).

37. At least since being served by this Complaint and corresponding claim chart, Defendant has actively, knowingly, and intentionally continued to induce infringement of the '860 Patent, literally or by the doctrine of equivalents, by selling exemplary Products to their

customers for use in end-user products in a manner that infringes one or more claims, including at least Claim 1, of the '860 Patent.

38. Exhibit B includes at least one chart comparing the exemplary claim 1 of the '860 Patent to Defendant's exemplary Products. As set forth in this chart, the Defendant's exemplary Products practice the technology claimed by the '860 Patent. Accordingly, the Defendant's exemplary Products incorporated in this chart satisfy all elements of the exemplary claim 1 of the '860 Patent.

39. Plaintiff therefore incorporates by reference in its allegations herein the claim chart of Exhibit B.

40. Plaintiff is entitled to recover damages adequate to compensate for Defendant's infringement.

41. Defendant's actions complained of herein will continue unless Defendant is enjoined by this court.

42. Defendant's actions complained of herein are causing irreparable harm and monetary damage to Plaintiff and will continue to do so unless and until Defendant is enjoined and restrained by this Court.

43. Plaintiff is in compliance with 35 U.S.C. § 287.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully asks the Court to:

1. Enter judgment for Plaintiff on this Complaint on all cases of action asserted herein;

2. Enter an Order enjoining Defendant, its agents, officers, servants, employees, attorneys, and all persons in active concert or participation with Defendant who receives notice of the order from further infringement of United States Patent No.

      9,054,860 (or, in the alternative, awarding Plaintiff running royalty from the time judgment going forward);

3.     Award Plaintiff damages resulting from Defendant's infringement in accordance with 35 U.S.C. § 284; and

4.     Award Plaintiff such further relief to which the Court finds Plaintiff entitled under law or equity.

## DEMAND FOR JURY TRIAL

Plaintiff, under Rule 38 of the Federal Rules of Civil Procedure, requests a trial by jury of any issues so triable by right.

Dated:  April 25, 2023

Respectfully Submitted,

*/s/   John C. Phillips, Jr.*
John C. Phillips, Jr. (#110)
Megan C. Haney (#5016)
**Phillips, McLaughlin & Hall, P.A.**
1200 North Broom Street
Wilmington, DE 19806
Tel: (302) 655-4200
Fax: (302) 655-4210
jcp@pmhdelaw.com
mch@pmhdelaw.com

René A. Vazquez
Virginia Bar No. 41988
*Pro Hac Vice* anticipated
rvazquez@ghiplaw.com

**GARTEISER HONEA, PLLC**
119 W. Ferguson Street
Tyler, Texas 75702
Telephone: (903) 705-7420
Facsimile: (903) 405-3999

ATTORNEYS FOR
DIGITAL VERIFICATION SYSTEMS, LLC